IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

ELIAS BODLEY, RAMON RAMOS and JOHN )
BETHELMIE, )
 )
                       Plaintiffs, )    CIV. NO.: 10-CV-51
      v. )
 )
FOSTER WHEELER ENERGY CORPORATION, )
A Delaware Corp; BETHLEHEM STEEL )
CORPORATION, a Pennsylvania Corp.; UOP, INC., )
a Connecticut Corp.; UOP, LLC, an Illinois Corp.; )
UOP, LLC, a Delaware Corp; RAYTHEON )
COMPANY, a Massachusetts Corp.; RAYTHEON )
CONSTRUCTORS, INC., a Massachusetts Corp.; and )
RAYTHEON ENGINEERS& CONSTRUCTORS, )
INC., a Massachusetts Corp., )
 )
 )
                       Defendants. )
_____ )

**Memorandum Opinion**

Finch, Senior Judge

      THIS MATTER is before the Court on the motion to dismiss filed by UOP, LLC and UOP, Inc. (collectively, "UOP"). UOP contends that plaintiffs Elias Bodley, Ramon Ramos and John Bethelmie ("plaintiffs") have failed to allege sufficient facts in their complaint to state a legal claim against UOP. Defendant Foster Wheeler Energy ("Foster") and URS Energy & Construction, Inc., f/k/a Washington Group International, Inc. ("URS") as successor in interest to defendants Raytheon Constructors, Inc. and Raytheon Engineers & Constructors, Inc., join in UOP's motion to dismiss. Plaintiffs oppose the motion, contending that the complaint adequately alleges legal claims against the defendants.

I.   **Background**

The suit arose from an accident that occurred at the HOVENSA oil refinery on St. Croix on June 4, 2009.   Plaintiffs Ramos and Bethelmie, employees of Turner St. Croix Maintenance, were installing a sight glass on a steam drum located in the west utilities area of the refinery. While Ramos and Bethelmie were installing the sight glass, Bodley, a HOVENSA operator was draining hot condensate from the drum into a blowdown drum.  The blowdown drum overfilled and hot water sprayed out of the blowdown drum's vent onto the platform where Bodley, Ramos and Bethelmie were working. As a result, all three men sustained second degree burns to their neck, back, buttocks and arms.  On June 17, 2010, plaintiffs brought suit asserting claims for (1) strict liability (count 1); (2) negligence (count 2); implied warranty (count 3) and punitive damages (count 4.)

In the complaint, plaintiffs allege that the accident occurred because the equipment they were using when the accident occurred was defective.  Specifically, plaintiffs allege that "No. 2 Wasteheat Boiler, B-1101F, Unit 1102 and/or No. 2 Wasteheat Boiler Blowdown Drum, D-1131F, Unit 1102 . . . and/or any component part of said equipment . . . including . . . the overflow alarms, valves, the gaskets, the flow meters, the motors, the hoses, the pipes, the flanges, the fittings" had been "designed, manufactured, tested, assembled, furnished, marketed, distributed, sold, supplied and/or certified . . . in a defective and unreasonably dangerous condition, and were not fit for the uses intended."  (Compl. ¶¶ 23-24.)  Plaintiffs also assert that the defendants knew or should have known that of dangers associated with the ordinary use of the product and failed to give adequate warnings about the dangers.  (Compl. ¶ 31.)  Plaintiffs allege that all defendants named in this suit engaged in the above-enumerated acts without linking specific acts to individual defendants.   Defendants contend that the complaint does not

meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.

**II.     Standard of Review**

Rule 8 requires a pleading that contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (a)(2). All material allegations in the complaint are taken as true, and the Court must construe all facts in a light most favorable to the non-moving party. *L'Henri, Inc v. Vulcan Materials Co.*, Civ. No. 206-170, 2010 WL 924259, at *1 (D.V.I. March 11, 2010) (citing *Christopher v. Harbury*, 536 U.S. 403, 406 (2002)). However, as the Supreme Court has recently interpreted the pleading standard, a plaintiff is obliged to provide "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (U.S.,2007). To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950. In making the plausibility determination, a district court must conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court must separate the factual and legal elements of the claim. *Id*. Although the Court "must accept all of the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Id*. at 210-211. Second, the Court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Id*. at 211. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not shown "that the pleader is entitled to relief." *Iqbal* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. Analysis

#### a. Strict Products Liability

Section 402A of the Restatement (Second) of Torts is the controlling law on products liability in the Virgin Islands. *Banks v. International Rental & Leasing Corp.*, Civ. Nos. 2002-200-203, 2008 WL 501171, at *3 (D.V.I. Feb. 13, 2008) (citing *Manbodh v. Hess Oil V.I. Corp.*, 47 V.I. 215, 242 (Super Ct. 2005).[1] The relevant passage of § 402A states:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Rest. 2d Torts § 402A.

In accord with § 402A, "[a] plaintiff sufficiently states a strict liability claim against a seller of a product for physical harm if he alleges '(1) the existence of a defect, (2) in an unreasonable dangerous condition, (3) which proximately causes the injury.'" *Matos v. Nextran, Inc.*, Civ. No. 2008-65, 2009 WL 2477516, at *6 (D.V.I. Aug. 10, 2009) (quoting *Murray v. Fairbanks Morse*, 610 F.2d 149, 154 (3d Cir.1979). Moreover, the plaintiff must establish that the defendant was "engaged in the business of selling" the product and that the product reached the user without a "substantial change" in condition to that in which it was sold. *Id.* (citing *Walker v. Skyclimber, Inc.*, 571 F. Supp. 1176, 1178 (D.V.I.1983) (citing Restatement (Second)

---

[1] "In the Virgin Islands, the various Restatements of law provide the rules of decision in the absence of local laws to the contrary." *Gass v. Virgin Islands Telephone Corp.*, 311 F.3d 237, 244-45 (3d Cir.2002) (citing V.I.Code Ann. tit. 1 § 4).

Torts § 402A)). "Where . . . [the seller] has reason to anticipate that danger may result from a particular use . . . he may be required to give adequate warning of the danger . . . and a product sold without such warning is in a defective condition." Rest. 2d Torts § 402A, cmt. h.

In this case, the plaintiffs have alleged that there is a defect in either No. 2 Wasteheat Boiler or No. 2 Wasteheat Boiler Blowdown Drum or the components thereof ["wasteheat equipment"]. They have alleged that the defect rendered the wasteheat equipment unreasonably dangerous in that the equipment was prone to overflowing when used for its intended purposes. Plaintiffs have also alleged that the overflow of hot condensate on June 4, 2009 caused each plaintiff second degree burns. However, UOP, citing the changed nature of pleading in the wake of *Iqbal* and *Twombly*, contends that the pleading is deficient in factual content. Specifically, UOP claims that plaintiffs have failed to identify the nature of the defect, whether it arose from the design or manufacture, and have not identified precisely which component caused the defect, nor linked any defendant with an allegedly defective component. Moreover, UOP questions whether plaintiffs have shown that the alleged faulty equipment played a role in causing plaintiffs' injuries.

The Court notes first that defendants rely solely on *Iqbal* and *Twombly* to attack the sufficiency of the plaintiffs' complaint without addressing how that standard applies to the particular claims brought by defendants, at least, not with any reference to cases interpreting that standard. As the Third Circuit has noted, "[s]ome claims will demand relatively more factual detail to satisfy [the plausibility] standard, while others require less." *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d 300, 320 (3d Cir. 2010).

With that precept in mind, the Court notes that under the Restatement (Second) of Torts, there is no requirement that the plaintiffs indicate whether the defect is one that arose from the

design or the manufacture of the product.[2] *See Matos*, 2009 WL 2477516, at *6 (finding that under § 402A, defect sufficiently stated where plaintiff contended that the "truck was defectively designed, manufactured and/or assembled"). Moreover, the fact that the plaintiffs have asserted that the defendants engaged in various actions associated with the allegedly defective machinery does not necessarily deprive his claims of plausibility.[3] Finally, as the Third Circuit has held in a case where § 402A was the applicable law, a plaintiff asserting a defective product is not required to point to some "specific dereliction by the manufacturer in constructing or designing the product." *Ocean Barge Transport Co. v. Hess Oil Virgin Islands Corp.*, 726 F.2d 121, 124 (3d Cir. 1984). Instead, the plaintiff, through the use of circumstantial evidence, may establish the defect "by showing an unexplained occurrence and eliminating all reasonable explanations for the occurrence other than the existence of a defect." *Id.*

However, the Court must determine whether, apart from identifying the kind of defect at issue, the plaintiffs have sufficiently alleged that a defect of any kind exists. Following the instructions of *Iqbal* and *Fowler*, the Court only accepts factual, not legal assertions, as true. In the case of a products liability claim, the parsing of fact from legal conclusion is challenging inasmuch as the word "defective" may be a factual or a legal conclusion. The Second Circuit has addressed this conundrum:

> As a term of art, "defective" gives little trouble when something goes wrong in the manufacturing process and the product is not in its intended condition. It is then defective in the normal sense of the expression. The condition of a product, however, may also be actionable if the product's design is not sufficiently safe or if it does not have adequate instructions or warnings. In a case of this type, the manufacturer intended the product to be in its present condition, and to assert that it is defective or that it has a defective design

---

[2] In contrast, the Restatement (Third) of Torts outlines defects based on (1) a manufacturing defect; (2) a design defect; and (3) inadequate instructions or warnings. *See* Rest. 3d Torts § 2 (2010). However, it is settled law that in the Virgin Islands, the Second, not Third, Restatement of Torts applies. Thus, the Court finds no basis for holding plaintiff to the standard set forth only in the Third Restatement of Torts.
[3] In *Gomez v. Pfizer, Inc.* 675 F. Supp. 2d 1159, 1163 (S.D. Fla. 2009), the district court noted that the plaintiffs had failed to allege, as required, the defendants' relation to the allegedly defective products. However, here, defendant points to no case law indicating that in the Virgin Islands, such facts must be pled to avoid dismissal.

is to use the term in a special sense that prevents its being very helpful in determining whether the product should be found to be actionable. "Defective" thus becomes an epithet-an expression for the legal conclusion rather than a test for reaching that conclusion.

*Denny v. Ford Motor Co*., 42 F.3d 106, 114 (2d Cir. 1994) (Van Graafeiland, J., dissenting) (quoting John Wade, *On Product 'Design Defects' and Their Actionability*, 33 Vand.L.Rev. 551, 551-52 (1980)). Generally, there is consensus that when the plaintiff alleges that a product is defective in design, he or she has asserted a legal conclusion. *See, e.g., United States v. Stephens*, 445 F.2d 192, 198 (3d Cir. 1971) (emphasis added) ("a naked claim of defective design" in a products liability case is a "[c]onclusory averment[] . . . and a statement of the ultimate legal principle" which requires "necessary specifics to support it."); *Ojeda v. Louisville Ladder Inc.*, 2010 WL 5065253, at *2 (11th Cir. Dec. 13, 2010) (plaintiff's statement that the ladder was defective because of its "improper design, shape, size, and configuration" was a legal conclusion); *Krummel v. Bombardier Corp.*, 206 F.3d 548, 551 (5th Cir. 2000) (noting that court's conclusion that product was not defective in design was a legal conclusion). However, even where the plaintiff uses the word "defect" to describe a manufacturing error, a "plaintiff's bald assertion" that a device is defective is insufficient to state a claim of products liability. *See, e.g., Nimtz v. Cepin*, Civ. No. 08-cv-1294, 2011 WL 831182, at **2-3 (S.D. Cal. March 3, 2011) (plaintiff's bald assertion that pacemaker was defectively manufactured and designed failed to state a plausible claim); *Gomez v. Pfizer, Inc.* 675 F.Supp.2d 1159, 1163 (S.D. Fla. 2009) (allegations that pharmaceutical products were defectively designed and/or manufactured because their intended use resulted in a substantial and unreasonable likelihood of causing a medical syndrome amounted to no more than "bare legal conclusions"). While a plaintiff is entitled to inferences in his or her favor, such inferences must be supported by sufficient factual

material. *Maio v. Aetna, Inc.*, 221 F.3d 472, 500 (3d Cir. 2000) (the court "need not accept as true unsupported conclusions and unwarranted inferences.").

In support of the allegation that the wasteheat equipment was defective, plaintiffs assert that the wasteheat boiler overflowed on the day of the plaintiffs' accident and that it was "prone" to overflowing. However, the facts asserted merely show the *possibility* that the overflow was a result of the defect in the wasteheat equipment. It may be just as likely, under the facts pled, that human error caused the accident.[4] Moreover, the allegation that the boilers were prone to overflowing is too vague to take the alleged defect out of the realm of speculation. Because the facts do not plausibly show that the equipment at issue here was defective, the plaintiffs' claim for strict products liability cannot stand. *Iqbal*, 129 S.Ct. at 1950 (plaintiff required to show more than mere possibility that defendant is liable for conduct alleged). While the Court is sensitive to the plaintiffs' need for discovery in sustaining their burden of proof, in this case, plaintiffs have not assembled the facts surrounding the incident such that the Court can reasonably conclude that a defect caused the overflow of the hot condensate. The Court also notes that plaintiffs have failed to set forth any facts in support of their claim that the defendants improperly failed to warn them of a dangerous condition associated with the wasteheat equipment. As stated above, a seller is required to give warnings where the seller "anticipate[s] that danger may result from a particular use." Rest. 2d Torts, cmt. h. Plaintiffs have not cited

---

[4] The plaintiff relies on this Court's ruling in *Matos* in arguing that his complaint contains sufficient factual assertions. In *Matos*, the plaintiff alleged that the brakes failed on the cement truck he was driving and that the truck rolled due to a defect in the chassis/frames or installation of barrel/drum, and the court accepted that the pleadings have sufficiently alleged the existence of a defect. *Id*. at *6. As stated above, some claims will demand more factual detail than others. *In re Insurance Brokerage Antitrust Litigation*, 618 F.3d at 320 (3d Cir. 2010). Keeping in mind that the determination of plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 129 S.Ct. at 1950, the Court had no trouble inferring in that case that the failure of the brakes and rolling of the truck were attributable to a defect. However, without more information, the Court, with limited experience in wasteheat boilers, cannot just as easily adduce the existence of a defect where a wasteheat boiler overflows while an operator is draining the hot condensate. Thus, the plaintiff in the instant matter is obliged to provide more details to support such an inference.

any facts showing the defendants could anticipate danger of the kind allegedly present in this case.

## IV. Conclusion

Having failed to allege facts sufficient to show that the wasteheat equipment was defective, plaintiffs have also failed to state a claim for negligence, breach of an implied warranty or supported a claim for punitive damages, as the defect is central to those claims.[5] Accordingly, all claims will be dismissed without prejudice. A separate Order accompanies this opinion.

ENTER:

Dated: April 26, 2011

_____/s/_____
RAYMOND L. FINCH
SENIOR U.S. DISTRICT JUDGE

---

[5] To state a claim for negligence in the Virgin Islands, a plaintiff must allege (1) a duty; (2) a breach of that duty; (3) causation; and (4) damages. *Charleswell v. Chase Manhattan Bank, N .A*., 308 F. Supp. 2d 545, 571 (D.V.I. 2004) (citations omitted). Here, where plaintiffs have failed to show the existence of a defect, they also have failed to show any breach of a duty or causation. *See, e.g., Anders v. Puerto Rican Cars, Inc*, Civ. No. 09-3880, 2011 WL 310524, at *3 (3d Cir. Feb. 2, 2011) (plaintiff could not support negligence claim against car rental agency when there was no evidence of brake or steering system defects in rental car). Similarly, plaintiffs' claim of breach of an implied warranty cannot stand. *Gumbs v. International Harvester, Inc*., 718 F.2d 88, 98 (3d Cir. 1983) (the evidence required to prove liability under section 402A (strict liability in tort) and section 2-314 (implied warranty of merchantability) is the same).